UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/2020
```

Roy Taylor,

                    Plaintiff,

        –v–

OBCC C.O. Nieves, *et al.*,

                    Defendants.

17-cv-7360 (AJN)

MEMORANDUM OPINION &
ORDER

ALISON J. NATHAN, District Judge:

    In this pro se prisoner case under 42 U.S.C. § 1983, Roy Taylor, then a detainee at the

Otis Bantum Correctional Center, claims that several correctional officers violated his

constitutional rights by pepper spraying him when he refused instructions to return to his cell.

The City of New York and the individual correctional officers move for summary judgment.

The Court concludes that the correctional officers are entitled to qualified immunity and that

Taylor has not produced evidence supporting a claim for municipal liability against the City.  It

thus grants the motion.

## I.     Background

    Taylor has not filed a statement of undisputed facts as required by Local Rule 56.1

despite being served with a notice to pro se litigants explaining the requirements of that rule.  *See*

Dkt. Nos. 78–79.  However, mindful of its obligation to construe pro se filings liberally, *Pabon*

*v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006), the Court construes his brief in opposition as a

response to the Defendants' Rule 56.1 Statement wherever it disputes the facts contained therein.

This factual recitation includes solely the facts on which all parties apparently agree.

On April 10, 2017, Taylor was a detainee at the Otis Bantum Correctional Center ("OBCC") on Riker's Island, New York.  Defendants' Rule 56.1 Statement ¶ 4.  The facility was in at least partial lockdown, under which the movement of at least some inmates was restricted. *Id.* ¶ 5; Plf. Br., Dkt. No. 88, ¶ 12.

Captain Katena Isaac, one of the defendant correctional officers, stopped in front of Taylor's cell on the balcony of the housing unit to supervise meal service to inmates in that area. Def. 56.1 ¶ 8.  After Taylor's cell door was opened, he exited his cell and rushed past Isaac.  *Id.* ¶ 9.  At the time, Taylor was wearing a soft cast because he had broken his wrist about six months earlier.  *Id.* ¶¶ 25, 39.  Isaac asked where Taylor was going and told him that he was not allowed to leave his cell.  *Id.* ¶ 10.  Taylor said he was going to the shower and continued along the balcony past Isaac, ignoring her instructions.  Plf. Br. ¶ 6; Def. 56.1 ¶ 12.  Isaac followed Taylor along the balcony and sprayed him from behind with a short burst of pepper spray.  Def 56.1 ¶ 12.

Taylor did not react to Isaac's use of pepper spray.  *Id.* ¶ 13.  He continued briskly along the balcony and then broke into a run.  *Id.*  Around this time, correctional officer Luis Nieves came up the stairs on the far side of the balcony to assist Isaac.  *Id.* ¶ 15.  Taylor rounded the corner of the balcony, and as he approached Nieves, turned back toward Isaac and started waving his hands and yelling.  *Id.* ¶¶ 16–17.  After gesturing wildly and yelling at Isaac for about thirty seconds, he turned and again started advancing toward Nieves.  *Id.* ¶ 18–19.  Nieves told Taylor to stop and warned him that he would use pepper spray.  *Id.* ¶ 20.  Taylor continued rushing toward him, and Nieves sprayed him in the face with a second short burst of pepper spray.  *Id.* ¶ 21; Plf. Br. ¶ 6.  Taylor stopped and staggered back.  *Id.* ¶ 22.  Captain Jermaine Slack, the last of the correctional officer defendants, arrived moments later and called a probe team.  *Id.* ¶ 23.

2

Slack handcuffed Taylor—first using mechanical cuffs on one arm only, and then switching to plastic flex cuffs with Taylor's hands positioned in front of his body—and the probe team escorted Taylor to the OBCC clinic. *Id.* ¶¶ 24–34. Staff at the clinic diagnosed Taylor with exposure to a chemical agent and a wrist contusion. *Id.* ¶ 37. He was returned to his cell with instructions to periodically rinse his face with cold water. *Id.* ¶ 38. When staff examined him at the clinic again two days later, he had recovered his full range of motion in his arm. *Id.* ¶ 41.

Taylor filed suit against the City and correctional officers. The City and correctional officers move for summary judgment, contending that the use of force was objectively reasonable; that the officers are entitled to qualified immunity; and that municipal liability does not lie against the City. *See* Dkt. Nos. 74, 76.

In support of their motion for summary judgment, the City and correctional officers presented evidence including video of the pepper spray incident from six different angles. *See* Declaration of Hannah V. Faddis, Dkt. No. 75, Exs. E–J. The video evidence is clear and comprehensive. It fully corroborates the account in the Rule 56.1 statement. It shows Taylor leaving his cell abruptly and briskly walking past Isaac without heeding her instructions. It shows him running along the curved portion of the balcony and then turning back, yelling, and waving his arms at Isaac. It then shows Nieves raise his pepper spray in warning as Taylor approaches, and discharge it only several seconds later as Taylor presses forward, undeterred.

## II.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit

under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (internal

citations omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In

applying this standard, [courts] 'resolve all ambiguities, and credit all factual inferences that

could rationally be drawn, in favor of the party opposing summary judgment.'" *Brown v.

Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (quoting *Cifra v. General Electric Co.*, 252 F.3d

205, 216 (2d Cir. 2001)).  "Rule 56(c) mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.     Discussion**

    **A.      The Defendant Correctional Officers Are Entitled to Qualified Immunity**

    A pretrial detainee's claim of excessive force or unconstitutional conditions of

confinement is governed by the Due Process Clause of the Fourteenth Amendment.  *Kingsley v.

Hendrickson*, 576 U.S. 389, 391 (2015); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  To

succeed on an excessive force claim, a pretrial detainee must prove that the use of force was

"*objectively* unreasonable."  *Kingsley*, 576 U.S. at 391–92.  "Considerations such as the

following may bear on the reasonableness or unreasonableness of the force used: the relationship

between the need for the use of force and the amount of force used; the extent of the plaintiff's

injury; any effort made by the officer to temper or to limit the amount of force; the severity of

the security problem at issue; the threat reasonably perceived by the officer; and whether the

plaintiff was actively resisting."  *Id.* at 397.  "Running a prison is an inordinately difficult

undertaking."  *Id.* at 399 (alteration omitted) (quoting *Turner v. Safley*, 482 U.S. 78, 84–85

(1987)).  Courts must thus afford prison officials some latitude to make "good-faith effort[s] to

4

maintain or restore discipline." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Qualified immunity protects officers who do not violate constitutional or statutory rights of which a reasonable person would have known. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Supreme Court precedent "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). A district court may consider whether qualified immunity is available without deciding whether the conduct complained of amounts to a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court concludes that the correctional officers are entitled to qualified immunity. Second Circuit precedent clearly disallows the gratuitous use of pepper spray against restrained individuals. *See Tracy v. Freshwater*, 623 F.3d 90, 98–99 (2d Cir. 2010). However, there is no clearly established law forbidding its use against individuals who refuse to comply with officer instructions after a warning. In *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017), the Second Circuit held that an officer who used pepper spray to subdue a suspect was entitled to qualified immunity. There, the suspect repeatedly refused to comply with the officer's instructions and to put her hands behind her back to be handcuffed. *Id.* The court held that it was not clearly unreasonable in those circumstances to push her to the ground and pepper spray her repeatedly, because the officer warned her before each use of pepper spray and she continued to refuse to comply. *Id.*

The correctional officers' treatment of Taylor was considerably more measured and restrained than the conduct in *Brown*.  Isaac sprayed Taylor just once, and then, after he continued to yell and move away from his cell, Nieves sprayed him just once more.  Def. 56.1 ¶¶ 12–21.  Their use of pepper spray was unaccompanied by other acts of physical force.  The video evidence shows that other steps they took to cajole Taylor to return to his cell were ineffective, and the force they used was the minimum necessary to achieve compliance with their instructions.  It further shows that, as in *Brown*, Nieves clearly warned Taylor before using pepper spray and only did so when Taylor continued to advance.  The deference due to prison officials in maintaining discipline is also greater than that due to police officers on the street.  *See Kingsley*, 576 U.S. at 399.  If the use of pepper spray in *Brown* was not clearly unreasonable, the correctional officers' conduct does not approach that high threshold.

Taylor also complains that the correctional officers unreasonably handcuffed him despite his prior wrist injury and exacerbated irritation from the pepper spray by washing his face with hot water, rather than cold.   However, he does not dispute that Slack initially only applied mechanical handcuffs to one of his arms, and then promptly switched to plastic flex handcuffs, in an apparent effort to avoid any injury.  *See* Def 56.1 ¶¶ 25–30.  Any injuries appear to be de minimis and do not support a claim of clearly unlawful conduct.  *See, e.g.*, *Walton v. Lee*, No. 15-cv-3080 (PGG), 2019 WL 1437912, at *4 (S.D.N.Y. Mar. 29, 2019) (de minimis injury from use of handcuffs fails to amount to excessive force).  Nor is there any clearly established law that decontamination of a prisoner after use of pepper spray with hot water, rather than cold, is constitutionally unreasonable, even where that fails to comport with a prison's internal policies.

Finally, Taylor raises two additional claims against the correctional officers.  In his brief in opposition to summary judgment, he argues that the prison discriminated against him by

allowing "gang members" to use the showers during the lockdown but not allowing him to do so. In his complaint, he also alleges that the officers failed to produce him to court and to allow him visits with counsel. Taylor supplies no evidence—or even more specific factual allegations—in support of either claim, and so the Court concludes that the officers are entitled to summary judgment on these claims, too. *See Celotex*, 477 U.S. at 322.

B. **Taylor Has Failed to Produce Evidence Supporting Municipal Liability**

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may not be held liable for constitutional violations by its employees on the basis of respondeat superior. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). Instead, a plaintiff must establish that a municipal policy or custom caused the constitutional violation. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). When a plaintiff's *Monell* claim rests on a failure to train, the plaintiff must establish "deliberate indifference" to constitutional deprivations in the face of "known or obvious consequences." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)).

Taylor has failed to demonstrate—or even plead—that the correctional officers' conduct in this case was the result of a municipal policy or custom. To the contrary, he argues at length that the officers' conduct was unreasonable because it was *contrary* to prison policy. *See, e.g.*, Plf. Br. ¶ 12 (contending that the correctional officers' orders for Taylor to return to his cell were contrary to prison policy); *id.* ¶ 14 (contending that the correctional officers' use of pepper spray was contrary to prison policy and that the officers failed to follow to prison decontamination procedures). Nor does Taylor allege or offer any evidence to show that the officers' conduct was the result of any systematic defect in training. Because Taylor bears the burden to establish

7

municipal liability, his failure to introduce any evidence to do so is fatal to his claim against the City on summary judgment.  *See Celotex*, 477 U.S. at 322.

### C.        The Defendant NYPD Officers Are Not Properly Joined in this Case

After this Court directed service in this case, it instructed Taylor to amend his complaint to clarify the true names of the defendants.  *See* Dkt. No. 33.  When Taylor did so, he also added to the caption of his complaint two New York Police Department officers and to the body of his complaint a new claim for wrongful arrest.  *See* FAC ¶ 5.  His factual allegations do not mention the two NYPD officers at all.  The Magistrate Judge assigned to this case ordered Taylor to amend his complaint to add any additional parties by June 12, 2019, and the Court then extended that deadline an additional month.  *See* Dkt. No. 43.  Taylor did not do so, and the NYPD officers identified in the caption of Taylor's amended complaint have not been served.  The Court therefore concludes that they were not properly joined as defendants in this action.

Nor would joinder of the NYPD officers be permissible under Federal Rule of Civil Procedure 20.  Taylor's allegations in support of this claim are sparse.  But the claim appears to relate to an entirely separate incident, occurring nearly a year earlier, in which Taylor was arrested following an altercation with a man who Taylor alleges was squatting in his brother's apartment.  FAC ¶ 5.  This claim does not "aris[e] out of the same . . . occurrence" as his claims related to the pepper spray incident, nor does it present any "question of law or fact" in common with his claims against the other defendants.  Fed. R. Civ. P. 20(a)(2).  Joinder would thus be improper.

The Court therefore concludes that Taylor has not and could not properly join the NYPD defendants in this action and so dismisses the claims against them without prejudice.

8

**Conclusion**

The motion for summary judgment filed by the City and the correctional officers (Dkt. No. 74) is GRANTED, and judgment will be entered in their favor.  Taylor's wrongful arrest claim against the NYPD officers is dismissed without prejudice.  All other pending motions are DENIED as moot.  The Clerk of Court is respectfully directed to enter judgment and close the case.

The Court finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Order to Taylor and to note the mailing on the public docket.

SO ORDERED.

Dated: November 30, 2020
New York, New York        _____
                                                  ALISON J. NATHAN
                                            United States District Judge

9